## TRACY v. QUILLEN ET AL.

PRINCIPAL AND SURETY.—*Extension of Time of Payment Indefinitely.*— *Promissory Note.*—An agreement for an extension, for an *indefinite* period, of the time of payment of a promissory note, made between the holder and principal without the knowledge or consent of the surety, will not discharge the latter, though founded upon a valuable consideration.

SAME.—*Dismissal of Action.*—An agreement between the holder and principal, that the former will dismiss an action pending on the note against both principal and surety, and make a credit on the note, will not discharge the surety, though made without his knowledge and consent and for a valuable consideration.

SAME.—*Complaint for New Trial.—Surprise.—Excusable Neglect.*—A complaint by the surety for a new trial, upon the ground, that, because of " surprise" and " excusable neglect " on the former trial, he had failed to plead and prove an alleged agreement between the plaintiff and the principal, for an extension of the time of payment indefinitely, is insufficient.

From the Montgomery Circuit Court.

*L. Wallace* and *G. D. Hurley*, for appellant.

*A. C. Jennison, W. P. Britton* and *M. W. Bruner*, for appellees.

NIBLACK, J.—The complaint in this proceeding was as follows :

" Bazil Tracy respectfully represents, that a suit was begun in the said [Montgomery] Circuit Court, complaint filed October 25th, 1875, by James T. Quillen, plaintiff, against Bazil Tracy, James Steele and Samuel Harlow, defendants ; that said suit was upon a note for one thousand dollars, a copy of which is filed herewith as a part of

this petition, marked 'Exhibit A;' that the complaint showed the indebtedness at that time to be eight hundred and sixty-nine dollars and sixty-five cents; that he, Tracy, employed John T. Bunch, attorney, to manage his defence; that the said defence was, substantially, that the note was executed to Quillen by Harlow, as principal, and [the said] Steele and this petitioner as sureties; that afterward the said Quillen agreed with the said Harlow, for a valuable consideration, to give the said Harlow an extension of time for the payment of said note, of which extension the said petitioner had no notice, neither did he consent thereto; that said Bunch had a conversation with said Harlow, before the trial was entered upon, and was told by said Harlow that the agreement for the extension of time of payment of said note was verbal, upon which understanding said Bunch went to trial; that, upon the trial, said Harlow, being called as a witness for petitioner, on cross-examination said the said agreement for the extension of time of payment was in writing; that all the terms in connection with the matter were embraced in a written agreement; that, upon said statement of the said Harlow, the cause was concluded adversely to this petitioner, and a judgment rendered against him for $———.

" Petitioner further says, that he and his said attorney were wholly taken by surprise, and wholly unprepared to make the defence upon the ground of a written agreement for the said extension of time, as they would have done had they not been informed and understood that the said agreement was verbal.

" Petitioner further says, that he has a good defence to said suit, substantially as above stated ; that he will be able to prove, upon a new trial, that the said Quillen did, for a valuable consideration, shown in an agreement in writing, a copy of which is filed herewith, and made part of this petition, marked ' Exhibit B,' agree to dismiss a suit already

begun on said note, and did actually dismiss the same at the April term of said circuit court, 1875; that the said note was not again put in suit until the November term of said court, 1875. Petitioner further states that he will prove conclusively, by said Quillen and said Harlow, that the said extension was given without his knowledge or consent. He will also show by the agreement, that the agreement was founded upon a valuable consideration; also, that there was a verbal understanding between said Quillen and Harlow, covered by the same consideration, that the said extension of payment should be until said Harlow could gather his harvest for the year 1875. Petitioner further states, that, on account of said understanding of said Bunch that the agreement was verbal instead of in writing, the said Bunch excusably neglected to draw the answer to the complaint upon the agreement in writing and [to] take steps to have the same produced by the opposite party, as evidence upon the trial. Wherefore, because of said surprise and excusable neglect, petitioner prays that he may, by proper order of the said court, be relieved from the judgment taken against him upon the trial of said cause, at the November term of [said] circuit court, 1875, that he may have a new trial of the cause, and such other relief as to the court may seem proper in the premises."

The copy of the agreement filed with the complaint, and referred to as " Exhibit B," was as follows :

" This article of agreement, between James T. Quillen and Samuel Harlow, witnesseth, that the said James T. Quillen, for and in consideration of Samuel Harlow and wife executing to James T. Quillen a warranty deed, in fee-simple, of certain lands heretofore conveyed by said Quillen to said Harlow, and by said Harlow mortgaged to said Quillen, a more particular description of which is contained in said mortgage, executed on the 2d day of April,

1874, to secure the purchase-money to said Quillen, and also in consideration of the agreement of said Harlow to give peaceable possession of said lands on the 1st day of November, 1875, the said James T. Quillen hereby agrees to dismiss both his suits against said Harlow and others, being numbered 1946 and 1947, on the docket of the Montgomery Circuit Court, April term, 1875, and to pay all costs accrued in the same, and also to give a credit of three hundred dollars, less the amount of costs in said suits, on the note of one thousand dollars ($1,000) sued on in case No. 1947; and said Quillen agrees, further, to deliver to said Harlow the mortgage note, and to release in full the mortgage sued on in 1946. And the said Harlow hereby agrees to convey said lands, as described in said mortgage, by a good warranty deed, executed by himself and wife, to James T. Quillen ; and further agrees to yield peaceable and quiet possession of said lands, on the 1st of November, 1875, and also to give Quillen the privilege of seeding whatever lands he wishes to seed this fall ; also, to have all the wheat straw of the present crop, said Quillen stacking it himself. And said Harlow is to include in said conveyance to said Quillen all lumber now situated on the lands conveyed, and Harlow agrees not to commit waste of any kind on said land ; Harlow to have said lands free of rent till the said 1st day of November, 1875, and to pay all taxes assessed on said lands for the year 1875.

" In witness whereof we have hereunto set our hands and seals, this 17th day of May, A. D. 1875.

" JAMES T. QUILLEN,
" SAMUEL HARLOW."

The defendant Quillen demurred to the complaint, for want of sufficient facts, and the court sustained his demurrer.

The plaintiff, Tracy, failing and refusing to plead further, final judgment was rendered against him, in favor of all the defendants.

Tracy *v.* Quillen *et al.*

The complaint shows that Harlow, on his cross-examination concerning the alleged agreement to extend the time for the payment of the note known as " Exhibit A," stated " that all the terms in connection with the matter, were embraced in a written agreement," referring, as. the inevitable inference is, to the written agreement above set out.

The complaint also avers, in substance, that Tracy could, upon another trial, prove by both Quillen and Harlow, "that there was," in addition to the written agreement, "a verbal understanding between said Quillen and Harlow, covered by the same consideration, that the said extension of payment should be until said Harlow could gather his harvest for the year 1875." But if, in point of fact, there was such an understanding, which is not directly averred, why did not Tracy prove its existence by either Quillen or Harlow, or both of them, upon the former trial ? Nothing is alleged as to the state of the issues, or otherwise, to explain or excuse the omission to make this proof upon the former trial. If such proof were not competent, then how could it be made competent by setting up the written agreement in defence upon a new trial, as Tracy alleges he desires to do ? It seems to us not to be sufficiently shown by the complaint, that it would be competent to prove the existence of such an additional "verbal understanding" between Quillen and Harlow, if a new trial were granted.

As we construe the allegations of the complaint, the important and controlling question in this case appears to be, would the stipulations contained in the written agreement above referred to  exonerate Tracy  as a surety on the note sued on at the former trial, if the question were  reopened, and another trial granted ? If not, then Tracy could not, upon another trial, found a defence upon it, and the " surprise" of which he complains was an immaterial one to his defence.

It is well settled in this State, that the extension of time for the payment of a note does not exonerate the surety, unless the extension is not only upon a valid consideration, and without the consent of the surety, but is also for a definite period of time. *Jarvis* v. *Hyatt*, 43 Ind. 163; *Hogshead* v. *Williams*, 55 Ind. 145 ; *Buck* v. *Smiley*, 64 Ind. 431. There are still other authorities to the same effect.

We see nothing in the written agreement that restrained Quillen from renewing his suit on the note upon which the judgment complained of was rendered, for any definite or appreciable time. It is true, that, upon the performance by Harlow of his part of the agreement, a credit was to be entered on the note as a payment, but that did not restrain Quillen from commencing a new suit on the note immediately, if he chose to do so.

In our opinion, therefore, the stipulations contained in this written agreement, however well pleaded, would not have constituted a valid defence for Tracy upon the former trial, and hence could not be made available as a defence for him, if a new trial were granted. The complaint was, in consequence, obviously bad for not disclosing a meritorious defence to the action in which the judgment sought to be set aside was rendered.

Other questions, touching the sufficiency of the complaint, have been discussed by counsel, but as what we have said shows the complaint to have been, at all events, fatally defective, it is quite unnecessary for us to further inquire whether the complaint might or might not have been in other respects sufficient.

The judgment is affirmed, at the costs of the appellant.